UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JOHN EDWARD YOUNG,

       Petitioner,

v.                                     Case No. 8:02-cv-583-T-23MAP

JAMES V. CROSBY, JR.,

       Respondent.

_____/


## O R D E R

John Young petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his state conviction for second degree murder, for which offense Young was sentenced to thirty-four years imprisonment.  The respondent served an answer (Doc. 8) supported by numerous exhibits ("Respondent's Exhibits"), and Young replied (Doc. 9).  Although timely,[1] the petition is meritless.

Young asserts seven grounds for relief, one substantive trial-related claim and six claims of ineffective assistance of counsel.  Because this action commenced after April 24, 1996, 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs these proceedings.  *Wilcox v. Florida*

---

[1] The respondent does not challenge the timeliness of the petition.

*Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).

FACTS[2]

In the early morning hours of October 14, 1995, on North 22nd Street, Tampa, Florida, Earl Starling sustained fatal injuries to his head and body.  The medical examiner testified that Starling died of a subdural hematoma.  John Young and three co-defendants were jointly tried.  Young and one co-defendant were convicted of second-degree murder, one co-defendant was convicted of manslaughter, and one co-defendant was acquitted.   Respondent's Exhibit 1 at 1836-37.  Young was sentenced as an habitual offender to thirty-four years imprisonment.  Respondent's Exhibit 1 at 1863.  The conviction and sentence were affirmed on direct appeal *per curiam* without an opinion.  Respondent's Exhibit 2.  Young's challenge to his conviction in a Rule 3.850 motion for post-conviction relief was rejected, and the rejection was affirmed *per curiam* without an opinion.  Respondent's Exhibit 3.

STANDARD OF REVIEW

Section 2254(d) creates a highly deferential standard for federal court review of state court adjudications.  In pertinent part, § 2254(d) states:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

_____

[2]  These facts are from Young's brief on direct appeal.  Respondent's Exhibit 2 at 2-3.

- 2 -

or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The purpose of federal review is not to retry the state case.  "The

Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's

role in reviewing state prisoner applications in order to prevent federal habeas 'retrials'

and to ensure that state-court convictions are given effect to the extent possible under

law."  *Bell v. Cone*, 535 U.S. 685, 693  (2002).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a
federal habeas court to grant a state prisoner's application for a writ of
habeas corpus with respect to claims adjudicated on the merits in state
court.  Under § 2254(d)(1), the writ may issue only if one of the following
two conditions is satisfied--the state-court adjudication resulted in a
decision that (1) "was contrary to . . . clearly established Federal Law, as
determined by the Supreme Court of the United States," or (2) "involved
an unreasonable application of . . . clearly established Federal law, as
determined by the Supreme Court of the United States."  Under the
"contrary to" clause, a federal habeas court may grant the writ if the state
court arrives at a conclusion opposite to that reached by this Court on a
question of law or if the state court decides a case differently than this
Court has on a set of materially indistinguishable facts.  Under the
"unreasonable application" clause, a federal habeas court may grant the
writ if the state court identifies the correct governing legal principle from
this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

Moreover, "[t]he focus . . . is on whether the state court's application of clearly

established federal law is objectively unreasonable, . . . an unreasonable application is

different from an incorrect one."  *Bell v. Cone*, 535 U.S. at 694.  *Accord Brown v. Head*,

272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Young's direct appeal and his appeal from the denial of his Rule 3.850 motion for post-conviction relief resulted in *per curiam* affirmances.  Nevertheless, the state appellate court's *per curiam* decisions are still entitled to deference under § 2254(d)(1), because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v.* Crosby, 538 U.S. 906 (2003).

Young has the burden of overcoming all state court factual determinations by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head,* 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  Although the state appellate court did not issue findings of fact entitled to deference, the state circuit court's findings in the order denying the Rule 3.850 motion for post-conviction relief is entitled to deference.  Respondent's Exhibit 3.

INEFFECTIVE ASSISTANCE OF COUNSEL

Young claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506,

- 4 -

1511 (11th Cir. 1995) (*en banc*) *(quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.

1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim.

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104
> S. Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-
> part test for analyzing ineffective assistance of counsel claims. According
> to *Strickland*, first, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must show
> that the deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687,
> 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

   *Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must

judge the reasonableness of counsel's challenged conduct on the facts of the particular

case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or omissions

were outside the wide range of professionally competent assistance."  *Strickland,* 466 U.S. at 690.

If counsel erred in representing Young, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland,* 466 U.S. at 691.  Young must demonstrate that the error prejudiced the defense to compel a finding of ineffective assistance of counsel.  *Strickland*, 466 U.S. at 692.  Young meets this burden by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland,* 466 U.S. at 694.

As stated above, Young must prove that the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In denying Young's Rule 3.850 motion for post-conviction relief, the state circuit court recognized that Young's claims of ineffective assistance of counsel were controlled by *Strickland.*

> When ineffective assistance of counsel is alleged, the burden is on the person seeking collateral relief to specifically allege the grounds for relief and to establish whether the grounds resulted in prejudice.  To have a facially valid claim for ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance was deficient, and second, there is a reasonable probability that the result of the proceeding would have been different absent the deficient performance.  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); King v. State, 597 So. 2d 780 (Fla. 1992).

Respondent's Exhibit 3 at 2-3.  Young cannot, therefore, show that the state court's

decision is contrary to controlling Supreme Court precedent.  Instead, Young will have

to show that the state court's decision was an unreasonable application of *Strickland* or

an unreasonable determination of the facts.  Consequently, the state court's

determination of each of Young's claims largely governs this court's review of those

same claims.

Ground 1:

> Young claims that counsel was ineffective for failing to properly assert his right to

a speedy trial.  The state post-conviction court rejected this claim stating:

> In Ground 9, Defendant claims that his counsel failed to move for
> dismissal on the ground of a speedy trial violation.  The record reflects that
> [co-defendant] Rubin Jones moved to dismiss the charge for a speedy trial
> violation, and Defendant joined in the Jones' objection.  Since Defendant
> fails to show counsel's deficient performance, no relief is warranted on this
> ground.

Respondent's Exhibit 3 at 5 (reference to attachments omitted).  Young's speedy trial

claim is based on Rule 3.191, Florida Rules of Criminal Procedure.  Young presents his

speedy trial claim only as a state law issue.  Federal habeas corpus review is limited to

violations of federal constitutional rights, not asserted violations of state law.

> A federal habeas petition may be entertained only on the ground that a
> petitioner is in custody in violation of the Constitution or laws or treaties of
> the United States.  28 U.S.C. § 2254(a).  A state's interpretation of its own
> laws or rules provides no basis for federal habeas corpus relief, since no
> question of a constitutional nature is involved.  *Bronstein v. Wainwright*,
> 646 F.2d 1048, 1050 (5th Cir. 1981).  State courts are the ultimate
> expositors of their own state's laws, and federal courts entertaining
> petitions for writs of habeas corpus are bound by the construction placed
> on a state's criminal statutes by the courts of the state except in extreme
> cases.  *Mendiola v. Estelle,* 635 F.2d 487, 489 (5th Cir. 1981).

*McCullough v. Singletary,* 967 F.2d 530, 535-36 (11th Cir. 1992), *cert. denied*, 507 U.S. 975 (1993). Consequently, Young's speedy trial claim, based solely on state law, fails to present an issue for federal review.[3]

Ground 2:

Young alleges that trial counsel was ineffective for failing to preserve for appellate review the prosecutor's improper use of a peremptory strike to remove an African-American from the jury panel. The state court rejected this claim stating:

> In Ground 2, Defendant claims that defense counsel failed to object to an improper jury selection process in which all African-American jurors were systematically removed.
>
> The record reflects that during voir dire, counsel for Deandre Berry, co-defendant, objected to the State's peremptory challenge to prospective African-American jurors, and requested a *Neil* inquiry.*[3] The Court conducted a *Neil* hearing to determine whether the peremptory challenge was exercised solely because of the prospective juror's race. The trial court agreed to recognize that all defense counsel joined in objections made by any defense attorney throughout the trial, unless counsel

------

[3] Even if Young presented his claim as a constitutional right to speedy trial, the claim would be without merit. First, the constitutional claim would not be controlled by time limits established by state law. *Routly v. Singletary*, 33 F.3d 1279, 1291 (11th Cir. 1994) ("Routly argues, *inter alia*, that because the length of delay in prosecution was beyond that allowed under the Florida rule, he was denied his right to a speedy trial. The Court notes that nowhere in the United States Constitution is there found a right to be brought to trial within 180 days."), *cert. denied*, 515 U.S. 1166 (1995). Second, Young's trial was approximately six months after he was charged. Analysis of a claim asserting the denial of the constitutional right to a speedy trial is governed by *Barker v. Wingo*, 407 U.S. 514, 523 (1972). The first factor in the *Barker* test—length of delay—acts as a triggering mechanism, because a defendant must first show that the length of delay was presumptively prejudicial. "[A]n accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (quoting *Barker*). A one year period between accusation and trial has been recognized as the amount of time necessary to require a speedy trial analysis. *Doggett*, 505 U.S. at 652 n.1 ("[T]he lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year. . . . [I]t simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."). *See United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999), *cert. denied* 530 U.S. 1250 (2000). *Accord United States v. DeRose*, 74 F.3d 1177, 1185 (11th Cir. 1996) (An "eight-month delay is insufficient to merit a Sixth Amendment speedy trial violation inquiry."). Young's six month delay does not even trigger a *Barker* inquiry into a constitutional claim of denial of speedy trial.

specifically desired to opt out.  All defense counsel joined in objecting to the State's peremptory challenge.  The issue concerning the propriety of the peremptory challenge was raised on Jenkins' direct appeal.  As such, Defendant is procedurally barred from raising issues which were or could have been litigated at trial and upon direct appeal through collateral attack.  Smith v. State, 445 323, 325 (Fla. 1983); Medina v. State, 573 So. 2d 293 (Fla. 1.990).  Accordingly, no relief is warranted on this ground.

> [3]  "A party objecting to the other side's use of a peremptory challenge on racial grounds must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is strong likelihood that they have been challenged solely because of their race."  State v. Neil, 457 So. 2d 481, 486 (Fla. 1983).

Respondent's Exhibit 3 at 3-4 (reference to attachments omitted).  Young cannot show that counsel's performance was deficient because counsel was credited with the objection made on behalf of a co-defendant.  Consequently, the state court's decision was not an unreasonable application of *Strickland*.

Ground 3:

Young alleges that trial counsel was ineffective for failing to object when the trial court dismissed a juror and added a replacement juror after the empaneling of the jury. The state court rejected this claim stating:

> In Ground 1, Defendant claims that his counsel failed to object to an improper jury selection process, and as a result, he was tried by a four-member jury.
>
> . . .  The record reflects that after a six-member jury panel was sworn, Meggs, a juror, complained about scheduling program [sic]. Defense counsel objected to dismissing Meggs from the jury.  After the discussion, all defendants agreed that three alternates would be selected so that Meggs could be dismissed and replaced by an alternate juror. Alternatives [sic] were selected on the following day.  Since defense counsel properly objected to dismissing the juror, and preserved the issue for an appellate review, Defendant's claim is not supported by the record. As such, no relief is warranted on this ground.

Respondent's Exhibit 3 at 3 (reference to attachments omitted).

After the initial six jurors were selected and empaneled, juror Meggs expressed

her dissatisfaction with being on the jury.

| Ms. Meggs: | I mentioned to the Court that I have a serious problem. My husband is based in New York. He is just going today to pick the girls up from school. |
| --- | --- |
| The Court: | I didn't hear you say that you could not be fair and impartial. We heard you say that you did have a problem, but when I asked the question does anyone have any kind of a problem whatsoever that would keep you from being fair and impartial, well, then, nobody raised their hand except for a few. |
| | Then when you were asked, does anyone have any kind of a problem, you had a scheduling problem, but then they didn't ask you about it. Now, you're what? |
| Ms. Meggs: | No, I'm sorry; they did ask and I raised my hand and I did mention it. |
| The Court: | In other words, now you're saying you can't be fair and impartial? |
| Ms. Meggs: | No, I'm not saying that. |
| The Court: | Can you rearrange your schedule? |
| Mr. Meggs: | I wish I could. I'm saying I have two commitments I have to attend to. My husband is flying out Thursday, going back to New York. I said I could not be here Tuesday and Wednesday and then with my husband flying back—he's coming here for surgery. |

Respondent's Exhibit 1 at 260-61. Young's counsel (Victor Martinez) objected to

dismissing juror Meggs unless she could not be fair and impartial, even though she was

mad about having to serve.

| Mr. Martinez: | I don't want to be a kink in the ointment here, Judge, but my client does not want to waive the presence of an African-American on the jury unless she says she can't be fair and impartial. Being mad isn't good enough for him. |
| --- | --- |

- 10 -

|  |  |
|---|---|
| | He wants to hear her say she can't be fair to him, give him a fair trial.  So — |
| The Court: | Now, that's something different now. |
| Mr. Martinez: | That's something different.  You asked me if I agree to their suggestion.   Their suggestion is — |
| The Court: | Your answer is, you don't agree? |
| Mr. Martinez: | We don't agree to let Ms. Meggs go. |
| The Court: | Your client doesn't agree to what? |
| Mr. Martinez: | Agree to excuse Ms. Meggs not because she's mad right now, but because she says she can't be fair and impartial. |
| The Court: | Excuse her then and what? |
| Mr. Martinez: | Then there is no problem with substituting others.  He doesn't want to let go of the only African-American if she says she can be fair; even though she's mad, she can be fair. |
| The Court: | If she says she can be fair, then your client wants to proceed with this jury? |
| Mr. Martinez: | Right. |
| The Court: | Mr. Bailiff, have the jury bring Ms. Meggs in. |

Respondent's Exhibit 1 at 281-82.  In response to the judge's questions, Ms. Meggs

stated that should could be a fair and impartial juror.

|  |  |
|---|---|
| The Court: | Ms. Meggs, we understand your problem.  If you are required to be a juror in this case and your husband comes down from New York and your husband is with your children, but you're a juror, are you telling this Court that if you are required to be a juror the rest of this week in this case and Monday and Tuesday of next week that you simply cannot be fair and impartial to the State of Florida and each defendant? |
| Ms. Meggs: | No, that's not what I'm saying at all. |

| | |
|---|---|
| The Court: | You can be fair, but you don't want to be a juror? |
| Ms. Meggs: | I can be fair.  I can be fair, and I'm not saying that I don't want to be a juror.  It's creating a hardship for me to be here. |
| The Court: | Well, I can understand that, certainly.  But, in other words, if you are required to be a juror, you can still be fair and impartial to both the State and each defendant? |
| Ms. Meggs: | Yes. |

Respondent's Exhibit 1 at 282-83.  The court then summarized the situation with

counsel as follows:

> All right, now, Mr. Young wants to proceed to trial with this six-member jury.  The other defendants and counsel have indicated that no way do you all want to go to trial with a juror who is madder than a hornet at having been selected after having mentioned the scheduling problem that she has and yet she says she can be fair and impartial, but it's obvious that she's still upset over having to be here.  Now, what do you suggest I do?

Respondent's Exhibit 1 at 284.  The court and counsel, including Young's counsel,

agreed to select alternate jurors the following morning, two alternate jurors plus an extra

one in the event that juror Meggs was dismissed from the jury panel.  After the alternate

jurors were selected, juror Meggs was again questioned about her ability to be impartial.

| | |
|---|---|
| The Court: | I understand, Ms. Meggs, that you still would like to be excused as a juror in this case? |
| Ms. Meggs: | Yes. |
| The Court: | You heard the question that I asked of you last night with reference to the fact that we are going to select three alternate jurors, and if for any reason that you, Ms. Meggs, felt like you could not be fair and impartial, we would then substitute an alternate juror. |
| | But last night, you indicated that although you were upset over being selected as a juror and did not want |

> to be a juror, that if you were forced to be a juror, you could still be fair and impartial to both the State and each defendant.
>
> What is you position this morning—or this afternoon?
>
> Ms. Meggs:    Under the circumstances—
>
> The Court:    Louder please.
>
> Ms. Meggs:    Under the circumstances, I cannot be fair and impartial to either side.

Respondent's Exhibit 1 at 521.  Juror Meggs was then dismissed with the agreement of Young's counsel and an alternate seated in her place.  Respondent's Exhibit 1 at 523.

The record clearly shows that Young's objection to dismissing juror Meggs was limited to whether she could be fair and impartial.  Consequently, counsel's performance was not deficient.  Young does not present any authority to support his contention that the judge could not dismiss juror Meggs and seat an alternate.  The state court's ruling was not an unreasonable application of the law or an unreasonable determination of the facts.

Grounds 4:

Young alleges that trial counsel was ineffective for failing to review the transcripts submitted to the appellate court for review on direct appeal and that such omission allowed "altered transcripts to go before the appellate judges."  The state court rejected this claim stating:

> In Ground 8, Defendant claims that his counsel failed to review the trial record before it was sent to the appellate court, and due to the error, the altered trial transcripts were sent for appellate review.  This claim is facially insufficient to warrant relief as he fails to identify which portion of the trial record has been altered.

Respondent's Exhibit 3 at 5.  This finding of lack of specificity is clearly erroneous and an unreasonable determination of facts.  In the motion for post-conviction relief, Young identified the basis for his claim of altered transcripts when he alleged that the "record of appeal . . . does not reflect what was actually said to swear in the juror's on May 7, 1996.  The record only reflects (the jurors were duly sworn by the clerk) in which the clerk could have told the jury anything not applicable to the oath required by law."  Respondent's Exhibit 3 ¶ 25 at 8.

However, Young fails to present the same claim in his federal petition.  Instead of asserting a claim based on the swearing-in of the jury, Young alleges that the appellate record fails to accurately represent (1) the jury selection process and (2) a "heated" exchange between himself and the prosecutor during cross-examination.  Nevertheless, Young is not entitled to relief because he never raised these facts in the state court to support a claim of altered transcripts.

A petitioner must present his claims to the state courts before raising them in federal court, and the claims presented to the federal court must be the same claims that were presented to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.")  "Mere similarity of claims is insufficient to exhaust," *Duncan v. Henry*, 513 U.S. 364, 366 (1995), and "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat

similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The

reverse of this statement is likewise true, that is, it is not enough to present the federal

claim before the state courts but not the facts necessary to support the claim.  *See, e.g.*,

*Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not

satisfied if a petitioner presents new legal theories or entirely new factual claims in

support of the writ before the federal court.").  By presenting to this court facts that were

not presented to the state court, Young fails to meet the exhaustion requirement

because he has not "fairly presented" the "substance" of his claim to the state courts.

Ground 5:

Young alleges that trial counsel was ineffective for failing to play for the jury the

call he made to 911.  The state court rejected this claim stating:

> In Ground 3, Defendant claims that his counsel failed to introduce a
> 911 tape into evidence, which would have revealed that he attempted to
> help the injured victim.  Defendant fails to show prejudice resulting from
> counsel's alleged error.  The record reflects that the 911 tape is
> cumulative to the evidence already adduced into trial.  During the trial,
> Defendant testified that he examined the victim, and left the crime scene
> to call 911.  If the potential evidence is merely cumulative, counsel's failure
> to present such evidence is not prejudicial.  Johnson v. Singletary, 695
> So.2d 263 (Fla. 1996).  Accordingly, no relief is warranted on this ground.

Respondent's Exhibit 3 at 4 (reference to attachments omitted).  Counsel's decision not

to pursue use of the 911 tape was a strategic or tactical decision.

*Strickland* cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation."

*Strickland,* 466 U.S. at 690-91.  Young cannot meet this burden by simply showing that, in hindsight, the avenue chosen by counsel proved ineffective.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir.1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled.") (*en banc* ) (quoting *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).  Young has not presented any case authority suggesting that the state court's application of *Strickland* was unreasonable.

Young argues that the tape was needed to substantiate his claim that he called 911 to help the deceased.  He contends that this evidence would have negated the state's theory that Young was guilty of second degree murder for having prevented the victim from receiving medical treatment.  Young's argument is meritless because the state's theory was that Young was a participant in beating the deceased. Consequently, Young's calling for medical assistance would not negate his participation in the beating.

Ground 6:

Young alleges that trial counsel was ineffective for failing to object to the state's use of Exhibit 6, a photograph of the victim's face.  The state court rejected this claim stating:

> In Ground 5, Defendant claims that his counsel failed to object to the introduction of a highly prejudicial photograph of the victim.  This allegation is facially insufficient to warrant further consideration as Defendant fails to identify the photograph in question.

Respondent's Exhibit 3 at 4.  This finding of lack of specificity is clearly erroneous and an unreasonable determination of facts.[4]  In the motion for post-conviction relief, Young identified the contested photograph.  "The Defendant contends that the state exhibit #6 (six) is highly prejudice [sic] to the Defendant.  The photograph is a large photo of the victim's face with respirator tubes running from his nose and mouth, which is in violation of evidence code 90.403.  Therefore exhibit #6 (six) created a state of sympathy in the jury."  Respondent's Exhibit 3 ¶ 22 at 7.

Nevertheless, Young is not entitled to relief because the admissibility of evidence is a matter of state law, and Young cannot convert a state evidentiary issue into a constitutional ineffective assistance of counsel claim.

Federal habeas corpus relief is generally not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Pulley v. Harris,* 465 U.S. 37 (1984); *Wainwright v. Goode*, 464 U.S. 78 (1983).  Federal courts possess only limited authority

---

[4]  Additionally, the assertion in the motion for post-conviction relief regarding the admissibility of a photograph as clearly identified as "Ground Seven" and not "Ground 5" as stated by the state court. Young's ground five in his motion for post-conviction relief is wholly unrelated to the admissibility of a photograph.

to consider state evidentiary rulings in habeas corpus proceedings.  *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).  Rather, a federal court's inquiry into state evidentiary rulings is limited to an examination of whether federally guaranteed rights were violated, *Nordskog v. Wainwright*, 546 F.2d 69, 72 (5th Cir. 1977), such as the denial of fundamental fairness.  *Hall v. Wainwright*, 733 F.2d 766, 770 (11th Cir. 1984).  "As a guideline to applying the criterion of fundamental fairness, the erroneous admission of prejudicial evidence can justify habeas corpus relief only if it is `material in the sense of a crucial, critical, highly significant factor.'"  *Dickson v. Wainwright*, 683 F.2d 348, 350 (11th Cir. 1982) (citations omitted).  The category of infractions that violate fundamental fairness is narrowly defined.  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991).  For the most part, evidentiary rulings simply do not raise questions of a constitutional magnitude.[5]

Ground 7:

Young alleges that the prosecutor's closing arguments were improper and prejudicial.  Young raised this claim on direct appeal, where it was summarily rejected.  Respondent's Exhibit 2.  Specifically, Young alleges that the prosecutor improperly (1) invoked the memory of the victim, (2) commented on Young's right to remain silent, and (3) commented on the socioeconomic circumstances of the witnesses.

Improper prosecutorial remarks will compel habeas corpus relief only if the remarks are so egregious that the proceedings are rendered fundamentally unfair.

The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due

---

[5]  The respondent correctly argues in its response that the photograph was admissible evidence—and in fact, it was actually required—because the defense would not stipulate to the identity of the victim and consequently the photograph was needed for a witness to identify the victim.

> process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40
> L.Ed.2d 431 (1974).  Moreover, the appropriate standard of review for
> such a claim on writ of habeas corpus is "the narrow one of due process,
> and not the broad exercise of supervisory power." *Id.* at 642, 94 S. Ct. at
> 1871.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Accord Cargill v. Turpin*, 120 F.3d

1366 (11th Cir. 1997).  "If a reviewing court is confident that, absent the improper

remarks, the jury's decision would have been no different, the proceeding cannot be

said to have been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th

Cir. 1986) (*en banc*), *cert. denied* 480 U.S. 911 (1987).  Consequently, fundamental

fairness is the standard of review, and not whether "the prosecutors' remarks were

undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. at 181.

Having reviewed the record, this court is confident that the prosecutor's remarks did not

"infect the trial with unfairness."  Consequently, Young has not met his burden.

Accordingly, the petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The

clerk shall enter a judgment against Young and **CLOSE** this action.

ORDERED in Tampa, Florida, on May 20, 2005.

_____
**STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE**

SA/ro